## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

EAST ASIA ALUMINUM COMPANY
LIMITED,

        Plaintiff,

   v.

UNITED STATES,

        Defendant.

Court No. 24-00255

## COMPLAINT

1.     Plaintiff East Asia Aluminum Co., Ltd. ("East Asia" or "Plaintiff") by and through its counsel hereby alleges and states as follows:

## JURISDICTION

2.     East Asia brings this action pursuant to Section 516A(a)(3) of the Tariff Act of 1930, *as amended* ("the Act"), 19 U.S.C. § 1516a(a)(3), to contest certain aspects of the final determination in the antidumping duty investigation of certain aluminum extrusions from Vietnam, Case No. A-552-837, issued by the International Trade Administration of the U.S. Department of Commerce ("Commerce"). *See Aluminum Extrusions From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 89 Fed. Reg. 80,530 (Dep't Commerce Oct. 3, 2024) ("*Final Determination*"), and accompanying Issues & Decision Memorandum ("IDM"); *see also Aluminum Extrusions From the Socialist Republic of Vietnam: Amended Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 89 Fed. Reg. 85,510 (Dep't Commerce Oct. 28, 2024) ("*Amended Final Determination*").

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c)

because this action is commenced pursuant to 19 U.S.C. § 1516a.

## PARTIES AND STANDING

4.      East Asia is a Vietnamese producer and exporter of aluminum extrusions.  East

Asia is therefore an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of

the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3).  East Asia was also party to the administrative

proceeding that led to the determination being challenged, as East Asia was selected by

Commerce as a mandatory respondent, responded to all of Commerce's questionnaires during

the course of that proceeding, and submitted a case brief and rebuttal brief to Commerce in

connection with that proceeding.  Accordingly, East Asia has standing pursuant to 28 U.S.C.

§ 2631(c) to commence this action.

5.      Defendant is the United States of America, acting by and through the U.S.

Department of Commerce.

## TIMELINESS OF THE ACTION

6.      Commerce's final affirmative determination was published in the *Federal

Register* on October 3, 2024.  89 Fed. Reg. 80,530.  Notwithstanding Commerce's final

affirmative determination, the International Trade Commission's ("Commission") final negative

determination was published in the *Federal Register* on November 22, 2024.  *See Aluminum

Extrusions From China, Colombia, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South

Korea, Taiwan, Thailand, Turkey, United Arab Emirates, and Vietnam*, 89 Fed. Reg. 92,720

(Int'l Trade Comm'n Nov. 22, 2024).  Plaintiff filed a summons initiating this appeal on

December 20, 2024, which was within thirty (30) days of the publication in the *Federal Register*

of the Commission's final negative determination.  This action was therefore timely filed in

accordance with 19 U.S.C. § 1516a(a)(3).  This Complaint is being filed on January 21, 2025,

which is within thirty (30) days of the filing of the Summons and is thus timely filed pursuant to

Rules 3(a)(2) and 6(a) of the Rules of this Court and in accordance with 28 U.S.C. § 2636(c).

## STATEMENT OF FACTS

7.      On October 4, 2023, petitioners U.S. Aluminum Extruders Coalition ("the

Coalition") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied

Industrial and Service Workers International Union ("USW") (collectively, the "Petitioners"),

filed a petition (the "Petition") with Commerce alleging that imports of aluminum extrusions

from Vietnam (as well as the People's Republic of China, Colombia, the Dominican Republic,

Ecuador, India, Indonesia, Italy, the Republic of Korea, Malaysia, Mexico, Taiwan, Thailand, the

Republic of Turkey, and the United Arab Emirates) were being, or were likely to be, sold in the

United States at less than fair value.

8.      Commerce requested additional information pertaining to the Petition through

supplemental questionnaires issued on October 10, 2023, October 11, 2023, and October 18,

2023.  Petitioners responded to these supplemental questionnaires on October 13, October 16,

and October 20, 2023, respectively.

9.      On October 24, 2023, Commerce issued a notice of the initiation of a less-than-

fair-value investigation with a period of investigation ("POI") for Vietnam, a non-market

economy ("NME") country, of April 1, 2023 through September 30, 2023.  *See Aluminum*

*Extrusions From the People's Republic of China, Colombia, the Dominican Republic, Ecuador,*

*India, Indonesia, Italy, the Republic of Korea, Malaysia, Mexico, Taiwan, Thailand, the Republic*

*of Turkey, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-*

*Than-Fair-Value Investigations*, 88 Fed. Reg. 74,421 (Dep't Commerce Oct. 31, 2023).

10.     On December 12, 2023, Commerce selected East Asia as one of two mandatory respondents in this investigation. *See* Mem. to James Maeder, Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations, from Katherine Smith, International Trade Compliance Analyst, Office II, Antidumping and Countervailing Duty Operations, "Less-Than-Fair-Value Investigation of Aluminum Extrusions from Vietnam: Respondent Selection" (Dec. 12, 2023) (on record of Case No. A-522-837).  Commerce issued initial questionnaires to East Asia the same day. *See* Letter from Rebecca M. Janz, Program Manager, Office II, Antidumping and Countervailing Duty Operations, to Eugene Degnan, Morris, Manning & Martin, LLP (Dec. 12, 2023) (on record of Case No. A-522-837).  East Asia subsequently filed its responses to Commerce's initial questionnaire. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Aluminum Extrusions from the Socialist Republic of Vietnam, Case No. A-522-837: East Asia Section A Initial Questionnaire Response" (Jan. 18, 2024) ("East Asia Sec. A Resp."); Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Aluminum Extrusions from the Socialist Republic of Vietnam, Case No. A-522-837: East Asia Section C-D Initial Questionnaire Response" (Feb. 8, 2024) ("East Asia Sec. C-D Resp.").

11.     In proceedings involving NME countries, Section 773(c) of the Act requires Commerce to use surrogate values of factors of production and other selling costs from a comparable market economy country. *See* 19 U.S.C. § 1677b(c).  On February 13, 2024, Commerce solicited surrogate value information from all interested parties in the investigation. *See* Letter to All Interested Parties from Rebecca Janz, Program Manager, Office II, AD/CVD Operations, Enforcement and Compliance, "Less-Than- Fair-Value Investigation on Certain Aluminum Extrusions from the Socialist Republic of Vietnam: Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Feb. 13,

2024).  East Asia submitted surrogate value comments on March 12, 2024 and April 8, 2024.

*See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Aluminum

Extrusions from the Socialist Republic of Vietnam, Case No. A-522-837: East Asia Aluminum

Surrogate Value Comments" (Mar. 12, 2024); Letter to Sec'y Commerce from Morris, Manning

& Martin, LLP, "Certain Aluminum Extrusions from the Socialist Republic of Vietnam, Case

No. A-522-837: East Asia Aluminum Surrogate Factual Information" (Apr. 8, 2024).  Petitioners

also submitted surrogate value comments.  *See* Letter to Sec'y Commerce from Wiley Rein LLP,

"Aluminum Extrusions from the Socialist Republic of Vietnam: First Submission of Surrogate

Values" (Mar. 12, 2024); Letter to Sec'y Commerce from Wiley Rein LLP, "Aluminum

Extrusions from the Socialist Republic of Vietnam: Final Submission of Surrogate Values" (Apr.

8, 2024).

12.    In its questionnaire responses, East Asia explained that it continuously

reintroduces its scrap into the production process.  Therefore, in its allocation of factors of

production provided to the agency, East Asia allocated the total original material consumption

quantity to the products produced which accounted for any scrap continuously reintroduced into

production in order to avoid double counting the scrap as a factor of production.  *See* East Asia

Sec. D Resp. at D-13.  This methodology thus accounted for the fact that the total consumption

quantity of the original material used includes the consumption quantity of materials that

produce the scrap.  *Id.*

13.    In response to a supplemental questionnaire, East Asia also reported price

adjustments for interest revenues related to late payments for certain constructed export price

("CEP") sales.  *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain

Aluminum Extrusions from the Socialist Republic of Vietnam, Case No. A-552-837: East Asia

Section C 2nd Supplemental Questionnaire Response" (Apr. 16, 2024) ("East Asia Sec. C 2nd

SQR") at 5-7. East Asia explained that for certain sales the customer did not pay the invoice

amount charged and East Asia accordingly charged the customer interest on the outstanding

payment. *Id*. East Asia reported this additional interest income on a sales-specific basis. *Id.*

14.     On May 7, 2024, Commerce published its *Preliminary Determination. See*

*Aluminum Extrusions From the Socialist Republic of Vietnam: Preliminary Affirmative*

*Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and*

*Extension of Provisional Measures*, 89 Fed. Reg. 38,075 (Dep't Commerce May 7, 2024)

("*Preliminary Determination*"). In its memorandum accompanying the *Preliminary*

*Determination*, Commerce explained that it selected Indonesia as the surrogate country for

determining costs of production and noted that it relied on the financial statements of PT Alakasa

Industrindo Tbk and its subsidiaries (collectively, "PT Alakasa"), an Indonesian company, to

derive surrogate financial ratios including selling, general and administrative ("SG&A")

expenses. *See* Mem. to Ryan Majerus, Deputy Assistant Sec'y for Policy and Negotiations, from

James Maeder, Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations,

"Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-

Value Investigation of Aluminum Extrusions from the Socialist Republic of Vietnam" (May 1,

2024) ("PDM") at 9-13, 30.

15.     On May 28, 2024, Commerce published its preliminary critical circumstances

determination, finding no critical circumstances with respect to East Asia. *Aluminum Extrusions*

*From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Critical*

*Circumstances, in Part, in the Less-Than-Fair Value Investigation*, 89 Fed. Reg. 46,064 (Dep't

Commerce May 28, 2024).

16.    Commerce officials then conducted verifications of the mandatory respondents, including a production verification at East Asia's factory site in Vietnam and a CEP sales verification of East Asia's affiliated importer in California.  In its production verification report, Commerce confirmed that officials verified that East Asia continuously reintroduces its scrap into production as East Asia reported.  *See* Mem. to the File from Rebecca Janz, Senior Int'l Trade Compliance Analyst, AD/CVD Operations, Office II, "Verification of the Questionnaire Responses of East Asia Aluminum Company Limited in the Antidumping Investigation of Aluminum Extrusions from the Socialist Republic of Vietnam" (July 30, 2024) ("Verification Report") at 10.  In its CEP verification report, Commerce confirmed that officials verified that one of East Asia's customers was frequently late on payments and that some late payment fees and interest had been paid while other fees and interest were still outstanding, including in the form of a promissory note.  *See* Mem. to The File from Rebecca Janz, Senior Int'l Trade Comliance Analyst, AD/CVD Operations, Office II, "CEP Verification of the Sales Response of East Asia Aluminum in the Antidumping Investigation of Aluminum Extrusions from the Socialist Republic of Vietnam" (July 30, 2024) ("CEP Verification Report") at 9-10.

17.    In its case brief before the agency, East Asia argued that Commerce verified the fact that it continuously reintroduces scrap into production and that Commerce's practice in similar cases has been to exclude the reintroduction of scrap into the production process because this would not account for the creation of the scrap itself.  *See* East Asia Case Br. at 5.  The self-generated scrap was internally reused in the same forging and melting workshop and not recorded as either an input or output by that workshop.  *Id*. at 6.  Where a respondent's manufacturing process generates a byproduct that it either sells or reuses, Commerce's practice is to allow the respondent a "byproduct offset" to offset the cost of producing that byproduct in the

calculation of normal value.  *See* 19 C.F.R. § 351.401.  However, East Asia noted that it did not

request a byproduct offset—which it would have been entitled to if it had reported the scrap as a

byproduct—because Commerce's practice has not been to value recycled inputs separately.  *See*

East Asia Case Br. at 6-7.

18.    East Asia also argued that the additional interest income on certain sales was

reported on a sales-specific basis and that it was entitled to an adjustment to U.S. price for late

payment of invoices, in accordance with Commerce's practice.  *See* East Asia Case Br. at 10-13.

East Asia argued further that PT Alakasa's financial statements were not suitable for calculating

surrogate financial ratios because PT Alakasa is not a producer of comparable or identical

merchandise and, indeed, is a trading and investment company rather than a producer of

aluminum extrusions.  *See id.* at 3-4.

19.    In their case brief before the agency, Petitioners suggested that East Asia

improperly granted itself a byproduct offset.  *See* Letter to Sec'y Commerce from Wiley Rein,

LLP, "Aluminum Extrusions from the Socialist Republic of Vietnam: Petitioners' Case Brief"

(Aug. 13, 2024) ("Petitioners' Case Br.") at 19-31.  Petitioners further argued that Commerce

should revalue a number of East Asia's inputs with different surrogate values than the ones used

by Commerce in the *Preliminary Determination*.  *See* Petitioners' Case Br. at 54-62.

Specifically, Petitioners argued that Commerce should use different values for Al-Cu Alloy,

Mangan Ingot, Chrome, Al-Ti-B Wire, Deslagging Agent, Sodium Dodecyl Sulfate, Surface

Passivating Agent, and Liquid Petroleum Gas ("LPG").  *Id.*

20.    In its rebuttal brief, East Asia reiterated that it consistently reported its use of

scrap and did not request a byproduct offset because the scrap was continuously reintroduced

into production rather than having distinguishable quantity and value as a byproduct.  Letter to

Sec'y Commerce from Morris, Manning, and Martin, LLP, "Certain Aluminum Extrusions from the Socialist Republic of Vietnam, Case No. A-552-837: East Asia's Rebuttal Brief" (Aug. 19, 2024) ("East Asia Rebuttal Br.") at 6-11. East Asia also explained that it reported its inputs based on the actual products it used in production or, in the case of LPG, on Indonesian Global Trade Atlas import data that Commerce found reliable. *See id.* at 18-21; *see also* PDM at 10, IDM at 48. East Asia further argued that Petitioners' proposed surrogate values for the various inputs did not match the inputs East Asia used, were based on speculation, or were merely "cherry-picked" data designed to increase East Asia's costs and thereby increase its calculated dumping margin. East Asia Rebuttal Br. at 18-21.

21. On October 3, 2024, Commerce published its *Final Determination*. *See* 89 Fed. Reg. 80,530. In its IDM accompanying the *Final Determination*, Commerce explained that it did not accept East Asia's reporting methodology regarding reintroduction of scrap. Commerce determined, however, that East Asia fully cooperated regarding this issue, and so applied facts available to calculate the quantity of scrap East Asia should have produced. *See* IDM at 14. Commerce then assigned a surrogate value for this scrap quantity. *See id*. Despite constructing a by-product quantity and value for East Asia's alleged byproducts, Commerce then denied East Asia a byproduct offset that would have prevented double-counting East Asia's cost of materials. *See* IDM at 17-18. Commerce also denied East Asia a full adjustment for all interest income on late payments from customers, despite providing an adjustment for late payment fees collected by East Asia with respect to certain invoices. *See id.* at 35. Commerce also continued to rely on PT Alakasa's financial statements for surrogate financial ratios. *Id*. at 39-40. Finally, Commerce agreed with Petitioners on a majority of the inputs for which Petitioners argued for new surrogate values and revised the surrogate values for Al-Cu Alloy, Chrome, Deslagging

Agent, Sodium Dodecyl Sulfate, and Surface Passivating Agent. *See id.* at 40-48.

22.    On the same day that the *Final Determination* was published, Petitioners alleged

that Commerce made a ministerial error. *See* Letter to Sec'y Commerce from Wiley Rein, LLP,

"Aluminum Extrusions from Vietnam: Ministerial Error Allegation" (Oct. 3, 2024) (on record of

Case No. A-552-837). Commerce determined that there was a ministerial error and issued an

amended *Final Determination*. *See Amended Final Determination*. As a result of Commerce's

adjustment to the *Final Determination*, the weighted-average dumping margin for East Asia (and

the separate rate companies) changed from 14.15 percent to 16.02 percent. Because the new

margin crossed Commerce's regulatory 15 percent threshold to determine that importers "knew

or should have known" that an exporter's prices were at less than fair value, Commerce revisited

its critical circumstances analysis with respect to East Asia. *See* Mem. to Scot Fullerton, Acting

Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations, from Minoo

Hatten, Director, AD/CVD Operations Office II, "Less Than Fair Value Investigation of

Aluminum Extrusions from the Socialist Republic of Vietnam: Analysis of Ministerial Error

Allegation" (Oct. 22, 2024) ("Ministerial Error Memo") (on record of Case No. A-552-837) at 3;

*see also* 19 C.F.R. § 351.206(h)(2).

23.    The Act provides that, in any investigation in which Commerce's final

determination is affirmative and in which critical circumstances have been alleged, Commerce

must also make a finding of whether there have been "massive imports of the subject

merchandise over a relatively short period" and either (i) there is a history of dumping and

material injury by reason of the subject imports or (ii) the importer "knew or should have known

that the exporter was selling the subject merchandise at less than its fair value." 19 U.S.C.

§ 1673d(a)(3).

24.     In response to the *Amended Final Determination*, East Asia filed a ministerial

error allegation alleging, *inter alia*, that Commerce acted contrary to law by conducting a critical

circumstances analysis for the *Amended Final Determination* because such an analysis is a

methodological change, and the law and Commerce's regulations do not permit Commerce to

make methodological changes at such a late stage in an investigation.  *See* Letter to Sec'y

Commerce from Morris, Manning & Martin, LLP, "Aluminum Extrusions from the Socialist

Republic of Vietnam, Case No. A-552-837: Ministerial Error Allegation" (Oct. 30, 2024) (on

record of Case No. A-552-837).

25.     Commerce disagreed with East Asia and upheld its critical circumstances

determination in the *Amended Final Determination*.  *See* Mem. to Scot Fullerton, Acting Deputy

Assistant Sec'y for Antidumping and Countervailing Duty Operations, from Minoo Hatten,

Director, AD/CVD Operations Office II, "Less Than Fair Value Investigation of Aluminum

Extrusions from the Socialist Republic of Vietnam: Analysis of Ministerial Error Allegation with

Respect to Amended Final Determination" (Dec. 6, 2024) (on record of Case No. 552-837).

26.     This appeal followed.

## STATEMENT OF CLAIMS

27.     This Court shall hold unlawful any determination, finding, or conclusion found to

be unsupported by substantial evidence on the record, or otherwise not in accordance with law.

19 U.S.C. § 1516a(b)(1).

28.     Commerce's *Final Determination* is unsupported by substantial evidence and is

otherwise not in accordance with law in the following respects:

### Count One

29.     Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30.     Commerce's determination not to accept East Asia's reporting methodology regarding self-generated scrap is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Two

31.     Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

32.     Commerce's determination to deny East Asia a byproduct offset after calculating a surrogate value for East Asia's byproducts is not based on East Asia's actual production reporting is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Three

33.     Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34.     Commerce's determination not to accept the amounts of interest income related to late payments that East Asia reported as still outstanding is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Four

35.     Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36.     Commerce's determination to use the financial statements of PT Alakasa as the most reliable source of surrogate values to calculate surrogate financial ratios is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Five

37.     Paragraphs 1 through 36 are incorporated by reference as if fully set forth herein.

38.     Commerce's determination to use surrogate values rather than the costs East Asia

reported for its inputs of Al-Cu Alloy, Chrome, Deslagging Agent, Sodium Dodecyl Sulfate, and

Surface Passivating Agent is not supported by substantial evidence and is otherwise not in

accordance with law.

## **Count Six**

39.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.     Commerce's *Amended Final Determination* that critical circumstances existed for

imports of East Asia's products is unsupported by substantial evidence and is otherwise not in

accordance with law.

## PRAYER FOR RELIEF

41.     Wherefore, Plaintiff East Asia respectfully requests that this Court:

a.      hold Commerce's *Final Determination* unsupported by substantial

evidence and otherwise not in accordance with law;

b.      remand the *Final Determination* to Commerce for a redetermination

consistent with the judgment and findings of this Court;

c.      remand the *Amended Final Determination* to Commerce with instructions

that if Commerce recalculates Plaintiff's weighted-average dumping

margin consistent with the judgment and findings of this Court, it must

revoke its critical circumstances finding; and

d.      provide such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Eugene Degnan
Eugene Degnan
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS MANNING & MARTIN LLP**
1333 New Hampshire Ave, NW
Suite 800
Washington, D.C. 20036
(202) 216-4819

Dated: January 21, 2024                    *Counsel to East Asia Aluminum Co.,*
                                           *Ltd.*

14